**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
BOSTON DIVISION**

| | |
|---|---|
| ROBINSON COMMITTEE, LLC and ) <br> JACK E. ROBINSON, ) <br> ) <br> Petitioners, ) <br> ) <br> v. ) <br> ) <br> FEDERAL ELECTION COMMISSION, ) <br> ) <br> Respondent. ) <br> ) | Case Number: 1:10-cv-11335-GAO <br> District Judge George A. O'Toole, Jr. <br><br> REPLY MEMORANDUM <br> OF LAW IN SUPPORT OF MOTION <br> TO DISMISS THE PETITION <br><br> LEAVE TO FILE GRANTED ON <br> NOVEMBER 9, 2010 |

**RESPONDENT FEDERAL ELECTION COMMISSION'S
REPLY MEMORANDUM OF LAW IN SUPPORT
OF ITS MOTION TO DISMISS THE PETITION
LEAVE TO FILE GRANTED ON NOVEMBER 9, 2010**

The First Circuit and courts in this district have consistently refused to grant the remedies petitioners seek — a summary denial or monetary sanctions — in disputes over pre-motion conferences in cases like this one involving dispositive motions. Respondent Federal Election Commission ("FEC" or "Commission") regrets not conferring with petitioners' counsel prior to filing its motion to dismiss. However, the FEC filed that motion in lieu of an answer in response to petitioners' action seeking judicial review of the FEC's administrative determination, and petitioners were certain to oppose the Commission's motion. As participants in the administrative proceedings, petitioners had notice of the issues involved, and thus they have neither been taken off guard by, nor suffered prejudice from, the FEC's response to their pleading. Indeed, such a response is required to be filed at the outset of the case by the Federal Rules of Civil Procedure. The sanctions petitioners request are inappropriate.

As of October 14, 2010, the parties have now conferred regarding the merits of this case, and the sole issue involved in the FEC's motion to dismiss cannot be resolved or narrowed. The FEC respectfully submits that the Court should proceed to the merits as to whether the Commission's final determination was arbitrary or capricious, as courts have typically done when confronted with similar circumstances.

I.  **The Court Should Not Deny the Motion to Dismiss For a Failure to Confer Because as a Dispositive Motion It Was Certain to be Opposed**

The Court should reject petitioners' request to deny without prejudice the FEC's motion to dismiss. The Court of Appeals for the First Circuit has specifically disapproved of such relief when the motion was certain to be opposed, such as with a potentially dispositive motion to dismiss. *See Edwards v. New England Tel. and Tel. Co.*, 86 F.3d 1146 (Table), 1996 WL 267276, at *1 (1st Cir. May 21, 1996) (stating in an unpublished decision that "neglecting to confer prior to filing a motion to dismiss, which was certain to be opposed, does not warrant the summary denial of the motion") (summarizing *Gerakaris v. Champagne*, 913 F. Supp. 646, 651 (D. Mass. 1996)); *see also Nasuti v. Kimball*, No. 09-30183-MAP, 2010 WL 2639850, at *3 n.3 (D. Mass. Feb. 1, 2010) (refusing to deny motion to dismiss due to Local Rule 7.1(a)(2) violation, because "[g]iven the nature of the motion [the failure to confer was] inconsequential and . . . mandating compliance would inappropriately delay addressing the underlying issues"), *rep't and rec. adopted in part, rejected in part by*, 2010 WL 2639854 (D. Mass. Jun. 29, 2010) (granting the motion to dismiss); *Struzziero v. Lifetouch Nat'l School Studios, Inc.*, 677 F. Supp. 2d 350, 354 (D. Mass. 2009) (citing *Edwards* and stating that "although parties should always comply with [Local Rule 7.1(a)(2)], the Court declines to decide the pending [summary judgment] motions based on such grounds"); *Walley v. Agri-Mark, Inc.*, No. 00-11393-RWZ, 2003 WL 22244957, at *3 n.2 (D. Mass. Sept. 30, 2003) ("[O]mitting to confer prior to filing a

motion certain to be opposed does not warrant so severe a sanction as summary denial." (citation and internal quotation marks omitted)).[1]

## II. The Court Should Not Order Monetary Sanctions Because Petitioners Participated in the Administrative Proceedings, Had Notice of the Motion's Narrow Issue, Suffered No Prejudice, and Would Have Found Conferring Futile

Monetary sanctions would also be inappropriate in the particular circumstances of this case. The administrative proceedings before the Commission already served to narrow and crystallize the only issue to be adjudicated before this Court: whether the Commission's final determination imposing a fine for late reporting of campaign finance information was arbitrary or capricious.[2] As participants in that administrative process, petitioners had notice of the issues and the Commission's positions on those issues. As a result, petitioners were not prejudiced by the lack of a specific meet-and-confer before the FEC's motion to dismiss their challenge to the Commission's final determination. *Cf. Travelers Prop. Cas. Co. of Am. v. Noveon, Inc.*, 248 F.R.D. 87, 91-92 (D. Mass. 2008) (stating that the "spirit of [Local Rule 7.1(a)(2)] is satisfied," and a failure to confer is "not prejudicial," where a party "clearly had notice of potential direct claims against them" and were "well apprised of the status of the litigation" prior to the motion); *Abbott v. Rabe*, No. 04-10777-NMG, 2005 WL 1000258, at *4 n.6 (D. Mass. Mar. 17, 2005) (rejecting allegation of Local Rule 7.1(a)(2) violation where the parties' representations "demonstrate[d] that there was sufficient discussion between counsel prior to the filing of the motion to dismiss to constitute compliance with the Local Rules").

---

[1] Indeed, the local rules of many federal jurisdictions explicitly exempt dispositive motions from their meet-and-confer requirements. *See, e.g.*, D.D.C. LCvR 7(m); N.D.N.Y. Local Rule 7.1(b)(2).

[2] *Cf. Hall v. U.S.*, 436 F. Supp. 505, 509 n.8 (D. Minn. 1977) (pointing out that "the prior administrative proceedings may narrow the issues for trial" in the district court).

Given the very recent, unsuccessful interaction between the parties during the administrative proceedings, a conference before the motion to dismiss would have been futile. Petitioners were engaged with the FEC's administrative proceedings from March 29, 2010, the date they were notified of the Commission's "reason to believe" finding, to July 23, 2010, the date the FEC notified them of its final determination.  (*See* Docket No. 7 at 5-6.)  Petitioners filed this action just 17 days later.  (Docket No. 1.)  The FEC then moved to dismiss 60 days later.  (Docket No. 5.)  The Commission had no reason to believe that during this short time, petitioners would have become receptive to the FEC's positions in the matter.  *Cf. Struzziero*, 677 F. Supp. 2d at 354 (finding that conferring before summary judgment motion would have been futile where "counsel conferred throughout th[e] case, [and] held a[n unsuccessful] settlement conference about one year" before the motion).  A conference would have been especially futile given the dispositive nature of the FEC's motion, which petitioners were certain to oppose.  *See Edwards*, 1996 WL 267276, at *1; *Nasuti*, 2010 WL 2639850, at *3 n.3; *Walley*, 2003 WL 22244957, at *3 n.2; *Gerakaris*, 913 F. Supp. at 651.

Moreover, the FEC did not "blind-side" petitioners by filing its motion to dismiss just before Columbus Day weekend on Friday, October 8, 2010.  October 8, 2010, is 60 days from August 9, 2010, the date the summons to the FEC was issued.  (Docket No. 2.)  Although petitioners had yet to (and still have yet to) perfect service of process under Rule 4(i)(2), the FEC chose to file on October 8, 2010, to eliminate any doubt regarding compliance with Rule 12(a)(2), which grants United States agencies 60 days after service on the United States Attorney

4

to serve a responsive pleading.[3]  If petitioners need more time to file a substantive opposition to the motion to dismiss, the FEC would not oppose an extension.

In arguing that the FEC should be sanctioned, petitioners rely on *Converse, Inc. v. Reebok Int'l Ltd.*, 328 F. Supp. 2d 166, 170 (D. Mass. 2004), which is nothing like this case.  In *Converse*, the litigation had been dormant for over two years when the plaintiff filed an emergency motion to shorten the time for a simultaneously filed motion for contempt and a motion to enforce a consent decree, without first conferring with counsel.  *Id.* at 171.  The motions included "extensive legal memoranda and affidavits."  *Id.*  Additionally, counsel included a Local Rule 7.1(a)(2) certification in the motion after simply leaving a voice mail for opposing counsel thirty minutes prior to filing, in what the district court found to be a bad faith, "deliberate choice to disregard the rules."  *Id.* at 170, 172 (internal quotation marks omitted). *See also Casual Male Retail Group, Inc. v. Yarbrough*, 527 F. Supp. 2d 172, 180 (D. Mass. 2007) (declining to follow *Converse* because it involved a "much more egregious situation").  Here, however, only 17 days separated the conclusion of the administrative proceedings and petitioners' initiation of this lawsuit.  The FEC was required to respond, and its motion to dismiss includes only a straightforward brief largely recapitulating the arguments from the administrative proceedings and three exhibits from those proceedings that are referenced in the Petition.  The FEC did not act in bad faith or deliberately choose to disregard Local Rule 7.1(a)(2).  Accordingly, *Converse* is inapposite, and monetary sanctions are inappropriate here.

---

[3]     As described in the FEC's Memorandum in Support of its Motion to Dismiss (at 14 n.3, Docket No. 7), petitioners have not served the United States Attorney for the District of Massachusetts or the Attorney General as required under Federal Rules of Civil Procedure 4(i)(1)(A)-(B) and (4)(i)(2).  Thus, the 60 days prescribed by Rule 12(a)(2) for the FEC to file its motion to dismiss have yet to start running and a re-filed motion by the Commission would be timely if the Court were to deny the motion to dismiss without prejudice as petitioners request.

**III.    The Court Cannot Refer This Case to the FEC's Alternate Dispute Resolution**

Finally, the Court should reject petitioners' request to stay the case and refer it to the FEC's Alternative Dispute Resolution ("ADR") Program. Petitioners' lawsuit asks this Court to review the FEC's Administrative Fines Program determination under the authority of 2 U.S.C. § 437g(a)(4)(C)(iii), which only allows petitioners to "request[] that the determination be modified or set aside." It does not provide petitioners a chance to second-guess the Commission's decision not to employ its ADR program or to readjudicate their case using a second administrative process, an additional layer of process that would be directly at odds with the purposes of both programs.

The Administrative Fines Program is the FEC's usual method of prosecuting violations of 2 U.S.C. § 434(a) by registered political committees, such as petitioners' reporting violation. *See* 2 U.S.C. § 437g(a)(4)(C)(i); 11 C.F.R. §§ 111.30-111.31. In 1999, Congress established the Administrative Fines Program to authorize the FEC to assess civil money penalties for reporting violations in lieu of its general investigatory enforcement procedures, which are applicable to all other types of violations. *See* 2 U.S.C. § 437g(a)(4)(C)(i). The Administrative Fines Program was intended to "let the agency deal with minor violations of the law in an expeditious manner" and to "give the FEC more time to investigate serious violations of the law." *See* 145 Cong. Rec. H5622 (daily ed. July 15, 1999) (statement of Congresswoman Maloney).

The FEC's ADR Program was similarly established to "facilitate[] a faster resolution" of certain disputes. *See FEC's Alternative Dispute Resolution Program*, at http://www.fec.gov/em/adr.shtml. Federal agencies were provided with specific authority to establish such programs by the Administrative Dispute Resolution Act, 5 U.S.C. § 572, and parties are not permitted judicial review of an agency's discretionary decision whether to employ

6

ADR in individual cases. *See* 5 U.S.C. § 581(b)(1) ("A decision by an agency to use or not use a dispute resolution proceeding . . . shall be committed to the discretion of the agency and shall not be subject to judicial review . . . ."). Petitioners have thus requested a remedy that this Court lacks authority to provide.

Even if the Court had authority to issue such a remedy, a referral to the ADR Program makes no sense at this juncture. The ADR Program is intended to be used *before* the FEC's traditional enforcement process begins, in hopes of avoiding that process. *See FEC's Alternative Dispute Resolution Program, at* http://www.fec.gov/em/adr.shtml. Here, this matter has already been adjudicated through the administrative fines process; it is thus too late for ADR to obviate the need for a different process, and the Commission has already made a determination regarding the appropriate remedy. Moreover, adding another layer of process would undercut the Administrative Fines Program's goal of handling matters in an expeditious manner. Petitioners cannot now request a second bite at the apple before the Commission because they are dissatisfied with the result of the administrative proceedings. The FEC adjudicated petitioners' case in a manner consistent with FECA and the Commission's regulations, and the only issue here is whether the FEC's determination was arbitrary or capricious. The Court should reject petitioners' attempt to divert attention from the fact that on the merits they cannot — and indeed, do not even attempt to — demonstrate that the FEC's final determination was contrary to law.

## CONCLUSION

For the foregoing reasons, petitioners' request for sanctions should be denied, and the FEC's motion to dismiss should be evaluated on its merits.

Respectfully submitted,

Phillip Christopher Hughey
Acting General Counsel

David Kolker
Associate General Counsel

Kevin Deeley
Assistant General Counsel

/s/  Kevin P. Hancock
Kevin P. Hancock
Attorney

COUNSEL FOR RESPONDENT
FEDERAL ELECTION COMMISSION
999 E Street NW
Washington, DC 20463
(202) 694-1650

Dated:  November 10, 2010                         e-mail: khancock@fec.gov

## Certificate of Service

I, Kevin P. Hancock, certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on November 10, 2010.

Dated: November 10, 2010                       Respectfully submitted,

/s/  Kevin P. Hancock
Kevin P. Hancock